IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AMJAD FSEISI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-02368 (AJT/WBP) |
| | ) | |
| O'KEEFE MEDIA GROUP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Amjad Fseisi, a consultant for various federal agencies, brings claims for fraudulent misrepresentation, conspiracy to commit the same, and violation of the Federal Wiretapping Act (18 U.S.C. § 2511 *et seq.*) against a political activist group and its agents for publishing his statements that they recorded in an undercover "political journalism" operation. Before the Court is Defendants' Motion to Dismiss, [Doc. No. 16] (the "Motion") that argues Defendants' activities are First Amendment-protected newsgathering, that Plaintiff failed to plead a tortious purpose for their recording his statements that would take that recording out of Virginia's single party consent rule, and that insofar as Defendants' activities constitute a tortious purpose under the wiretapping statute, that statute is unconstitutional. The Court held a hearing on the Motion on March 25, 2026, following which it took the Motion under advisement. Upon review of the Motion, the memoranda in support thereof and in opposition thereto, the argument of counsel at the hearing and for the reasons states herein, the Motion is **GRANTED**.

### I. BACKGROUND

The Complaint alleges the following:

1

Defendant James O'Keefe is a conservative political activist whose organization, Defendant O'Keefe Media Group ("OMG"), frequently engages in "sting" operations in which its agents use false identities to arrange meetings with individuals affiliated with government, mainstream media, or progressive organizations, and surreptitiously record them with the goal of publishing the subject's potentially unflattering or controversial statements so as to tarnish the reputations of the subject or their affiliated institution or, in OMG's words, to "expos[e] corruption." [Compl.] ¶¶ 5-6. Plaintiff, a top secret-cleared information systems security consultant to government agencies, including the Central Intelligence Agency, the National Security Agency and the Office of Director of National Intelligence, fell prey to one such operation in April 2024, during what he thought were two romantic dates with "Jane Doe," who unbeknownst to Plaintiff, was an OMG employee. *Id.* ¶¶ 4, 16, 47.

Jane Doe contacted Plaintiff via the Bumble dating app and, during both dates, represented herself as a liberal and pressed him for details on his work, including whether certain government agencies may have surveilled or withheld information from then-former President Donald Trump. *Id*. ¶¶ 13, 19-20, 29-32. In response to this questioning, Plaintiff stated, *inter alia,* that while "anything was possible" and he could not give Jane Doe a straight answer, he "believed" some information was withheld, and that NSA or CIA "could have" surveilled Trump.[1] *Id*. ¶¶ 23, 29-33. On the second date, Plaintiff noticed what he thought was a recording device in Jane Doe's bag (which she had kept on the table during both dates) and asked her whether he was being recorded. *Id*. ¶¶ 17, 28, 34. In response, she denied that, but then repeatedly refused to allow him to inspect

---

[1] The videos posted by OMG, which Defendants link to in their Motion and which the Court may consider as intrinsic to the Complaint, *see Decoster v. Becerra*, 119 F.4th 332, 336 n.1 (4th Cir. 2024), contain statements that are much more explicit than those alleged in the Complaint (and do not appear to be cut or deceptively edited). *See VIDEO INSIDE CIA: Project Manager Says Execs and Directors of CIA Withheld Information From Trump*, OMG, YOUTUBE, May 1, 2024, https://youtu.be/dECjeJNzqrg?si=EbQ7__dfEqZDRWyA (the "First Video").

her bag and shortly left the restaurant. *Id*. ¶¶ 35-39. Despite this experience, Fseisi later agreed to meet Jane Doe again in the District of Columbia, where he was instead confronted by O'Keefe and a cameraman. *Id*. ¶¶ 38-45.

In early May, 2024, OMG made multiple posts on its website and social media accounts which included video footage from the first and second dates and the O'Keefe confrontation that included Plaintiff's statements to Jane Doe that "we kept information from him [Trump]" (and that the "we" specifically included past CIA Directors Gina Haspel, Mike Pompeo and members of their executive staffs), and showed him responding affirmatively to Jane Doe's question of whether "the intel community used FISA[2] to spy on Trump and his team." *See* [First Video] at 0:28, 2:00, 15:30; *see also* [Compl.] ¶¶ 47-48. The posts also included O'Keefe's commentary on Plaintiff's statements and other topics related to purported intelligence community activity. *Id*. Plaintiff alleges that he suffered various professional repercussions from these publications, chiefly that one or more federal agencies placed a "flag" on his security clearance on an unspecified date, and that he has been rejected from multiple jobs and/or projects on clearance-related grounds, resulting in eight months of unemployment. *Id*. ¶¶ 53-57. Plaintiff also alleges, *inter alia*, "severe emotional distress . . . [f]ear and terror resulting from death threats directed towards him . . . [and] damage to his personal and professional reputation." *Id*. ¶ 57.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This does not require detailed allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-

---

[2] Foreign Intelligence Surveillance Act, 50 U.S.C. ch. 36.

me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "When a . . . complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand [a motion to dismiss]." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 517 (2014) (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)). The Court must accept all well-pled facts in the complaint as true and construe all facts in the light most favorable to Plaintiffs. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

### III. DISCUSSION

Plaintiff assets three claims; (1) misrepresentation (Count I); (2) Conspiracy to commit misrepresentation (Count II); and (3) violation of the Federal Wire Tap Act (Count III). Plaintiff claims the same damages under each Count. [Compl.] ¶¶ 57-73.

**A. Plaintiff's claims for damages arising out of the publication of his statements are barred by the First Amendment (Counts I-II).**

Defendants concede that their purported status as journalists does not make them exempt from "generally applicable laws . . . simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991). They contend, however, that the holding and pronouncements in *New York Times Co. v. Sullivan* protecting media companies from defamation suits should bar Plaintiff, who they contend is a limited purpose public figure,[3] from recovering from them any publication-related damages without a showing that OMG's publications were false and were made with

---

[3] In apparent recognition of that status under existing law, given the nature of Plaintiff's employment and the content of his voluntary statements to Jane Doe, *see Hatfill v. New York Times Co.,* 488 F. Supp. 2d 522, 528 (E.D. Va. 2007), *aff'd sub nom. Hatfill v. The New York Times Co.,* 532 F.3d 312 (4th Cir. 2008) (holding that employee of government contractor was both a public official and public figure for purposes of *Sullivan*); *see also CACI Premier Technology, Inc. v. Rhodes*, 536 F.3d 280, 294–95 (4th Cir. 2008). Plaintiff does not challenge that he is a limited purpose public figure and in fact concedes that he cannot recover "defamation-type damages under non-reputational tort claims, without satisfying the stricter (First Amendment) standards of a defamation claim." [Opp.] at 14 (quoting *Food Lion. V. Cap. Cities/ABC, Inc.*, 194 F.3d 505 (4th Cir. 1999)..

"actual malice," citing *Sullivan*, 376 U.S. 254 (1964). [Mot.] at 19–21. In support of that contention, they principally rely on two cases that denied such recovery within a First Amendment context: *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988), which extended *Sullivan*'s logic to bar quasi-defamation recovery against a media organization in order to eliminate an end-run around the First Amendment protections put in place by *Sullivan,* and *Food Lion, Inc. v. Cap. Cities/ABC, Inc.,* 194 F.3d 505, 510 (4th Cir. 1999), discussed below.

Plaintiff, by contrast, contends that Defendants' liability is not based on the tort of defamation but rather misrepresentation, and on that basis, OMG's publications for the purposes of his claims "did not constitute a form of expression by the Defendants; rather, the statements were the product of misrepresentations." [Opp.] at 15. Based on that characterization, Plaintiff contends that the pronouncements in *Hustler Mag.* and *Food Lion* do not foreclose liability; and liability is established under *Cowles*, which requires that "truthful information sought to be published must have been lawfully acquired." *Cowles*, 501 U.S. at 669.

In *Food Lion,* two ABC news reporters used false identities to obtain jobs at branches of Food Lion's grocery store chain in order to investigate the chain's labor and food handling practices, and after being hired based on misrepresented identities and experience, they used hidden cameras and microphones to gather footage which was aired on a television news broadcast. *Id*. at 510–11. After Food Lion sued ABC, Food Lion obtained a jury verdict against ABC and its employees for fraud, and against the reporters for trespass and breach of the duty of loyalty. *Id*. at 511. On appeal, the Fourth Circuit applied *Cowles* to hold that the First Amendment did not bar Food Lion's recovery for trespass and breach of loyalty, but found that under *Hustler Mag.*, Food Lion could not recover "publication damages," which it defined as all damages resulting from the news broadcast itself, because those damages were reputational in

5

nature and thus represented an attempt to circumvent the *Sullivan* standard for defamation claims by public figures. *Id*. at 523—24. Defendants contend that both *Hustler* and *Food Lion* apply here to bar Plaintiffs' recovery for his fraudulent misrepresentation and conspiracy claims. The Court agrees.

All of Plaintiff's claimed damages arise out of OMG's publications, however characterized, and are therefore barred under *Food Lion*. Here, as in *Food Lion*, OMG's publications, whether defamatory or "a product of misrepresentation," were clearly a form of expression (*viz*., what Plaintiff said and what OMG claimed he said) and did not constitute the breach of a promise as in *Cowles*. And while the remaining torts at issue in *Food Lion* (fraud, breach of duty of loyalty and trespass), some of which are also alleged here, came within *Cowles'* holding in that "ABC obtained the videotapes through unlawful acts," the Fourth Circuit held that Food Lion was not entitled to publication damages without meeting the *Sullivan* standard "to give adequate 'breathing space' to the freedoms protected by the First Amendment." *See Food Lion*, 194 F.3d at 522–24. Plaintiff's claims to recover damages, all of which arise out of OMG's publications, are therefore foreclosed by the First Amendment.

### B. Plaintiff fails to allege any cognizable damages attributed to his misrepresentation or conspiracy to commit fraudulent misrepresentation (Counts I-II).

Nor can Plaintiff otherwise recover damages under his misrepresentation claim or conspiracy to commit misrepresentation claim. To plead fraudulent misrepresentation under Virginia law, a plaintiff must allege "(1) a false representation, (2) of a present, material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled that is both reasonable and detrimental, and (6) resulting damage to the party misled." *Thompson v. Bacon*, 245 Va. 107, 111 (1993).

6

The district court in *Food Lion* found that the grocery chain had failed to prove that the defendants' tortious acts proximately caused the publication damages because the publication was an intervening cause. *See Food Lion, Inc. v. Cap. Cities/ABC, Inc.*, 964 F. Supp. 956, 959–66 (M.D.N.C. 1997). Likewise here. While there are alleged misrepresentations, ranging from Jane Doe's true identity to her motives in seeking out the Plaintiff, the publication of Plaintiff's statements constituted an intervening cause from which the alleged damages resulted.[4] Therefore, Plaintiff has not and cannot plead facts plausibly satisfying the causation element of his fraud claim.[5] And Plaintiff's conspiracy to commit misrepresentation fares no better for similar reasons.[6]

### C. Plaintiff Fails to Allege a Tortious Purpose for the Recordings as required Under the Federal Wiretap Act (Count III).

Plaintiff's final claim is that Defendants' recording of his statements without his consent violated the Federal Wiretap Act's general prohibition on intentionally recording an oral communication. 18 U.S.C. § 2511(1)(a). Recognizing that Virginia is a "one-party consent" state, meaning that only one party must consent to the recording, Plaintiff nevertheless contends that

---

[4] *See* [Compl.] ¶ 47 ("As a direct and proximate result of Defendants' defamatory statements, Mr. Fseisi has suffered: (a) Severe emotional distress, humiliation, and depression necessitating psychiatric and psychological medical treatment (b) Fear and terror resulting from death threats directed towards him as a result of OMG and O'Keefe's defamatory statements; (c) Damage to his personal and professional reputation…"). In his opposition, Plaintiff states that "the harm [he] suffered did not stem from defamation, but rather from the fraudulent misrepresentations that were designed to give him a false sense of security in speaking freely about his opinions and beliefs concerning the government." [Opp.] at 13 n.3. Under either description, publication was, as in *Food Lion*, an intervening cause of his alleged damages, without which Plaintiff in this case would not have suffered any cognizable damages, including those arising out of "a false sense of security in speaking freely." This case is also distinguishable from *Food Lion*, where the Court found that the breach of duty of loyalty and trespass caused damages separate and apart from the publication damages. *See Food Lion*, 194 F.3d at 522.

[5] *Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1305 (4th Cir. 1993) ("the common law of Virginia requires a showing of proximate cause to establish a fraud claim") (citing *Murray v. Hadid*, 238 Va. 722, 385 S.E.2d 898, 903–04 (1989)).

[6] A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish [a] criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Qiu v. Huang*, 77 Va. App. 304, 327, 885 S.E.2d 503, 514 (2023). Here, given the alleged relationship of all the Defendants, see [Compl.] ¶¶ 5-7, 66-67 (alleging all the Defendants acted as agents or employees of the same entity (OMG), with the single objective of producing the news story), it would also appear that Count II is barred by the intra-corporate immunity doctrine, which holds that a corporation or organization cannot conspire with its own agents acting within the scope of their employment. [Mot.] at 22 (citing *Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 352 (4th Cir. 2013)).

Defendants' activity falls under the exception for a "communication [] intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id*. § 2511(2)(d) (the "Purpose Provision"). Defendants argue, *inter alia*, that the claim must be dismissed because Plaintiff failed to properly plead a tortious purpose for the recordings.[7]

Plaintiff alleges that the recordings were made for the tortious purpose of defaming him ([Compl.] ¶ 72); but while he concedes that he does not allege a defamation claim or rely on any defamatory aspect of Defendants' public statements, *see* [Opp.] at 13 n.3., he argues that his misrepresentation and conspiracy allegations provide the tortious purpose for the recordings.

The Purpose Provision requires an intent to commit a *future* tortious act. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022)(under § 2511(2)(d), the intended future *use* of the recording must be unlawful, irrespective of whether the recording itself was obtained unlawfully); *Democracy Partners v. Project Veritas Action Fund*, 285 F.Supp.3d 109, 124 (D.D.C. 2018)(same); *see also Carter Mach. Co. v. Gonzalez,* No. CIV. A. 97-0332-R, 1998 WL 1281295, at *2–4 (W.D. Va. Mar. 27, 1998) (dismissing claim under section 2511(2)(d) where the plaintiff failed to adequately plead claims for fraud and civil conspiracy, which were, *inter alia,* the purported tortious purposes for his wiretapping claim); *Roberts v. Charlotte Mecklenburg Hosp. Auth.,* No. 3:24-cv-00382, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025).

Here, the relied-upon misrepresentations all occurred before the publication of the recordings (viz: chiefly during the Bumble dating app messaging between Plaintiff and Jane Doe)

---

[7] Because this issue disposes of the claim, the Court need not reach Defendants' other grounds for dismissal, including that Plaintiff lacked an expectation of privacy in making his statements, and that that the Purpose Provision would be unconstitutional as applied if it were held to encompass the mere publication of the recordings at issue here. [Mot.] at 31–37.

and were part and parcel of Defendants' scheme to obtain the recordings, not the purpose for which the recordings were intended to be used. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022) ("§ 2511(2)(d) requires that the criminal or tortious purpose be independent of and separate from the purpose of the recording."). Because Plaintiff has not otherwise plausibly alleged that Defendants intercepted his oral communications with the purpose of committing a subsequent tort or criminal offense, his wiretapping claim must be dismissed.[9]

**IV. CONCLUSION**

For the reasons set forth above, it is hereby

**ORDERED** that the Motion be, and the same hereby is, **GRANTED**, and the case is dismissed.[10]

The Clerk is directed to forward copies of this order to all counsel of record, and to terminate the case.

_____ /s/
Anthony J. Trenga
Senior U.S. District Judge

May 14, 2026
Alexandria, Virginia

---

[9] In support of this claim, Plaintiff cites *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016), which involved other O'Keefe-affiliated entities. That case is fundamentally different on the facts, but in any event, its relied upon holding that Plaintiff had plausibly alleged a criminal or tortious purpose based on a RICO claim was reversed by the Ninth Circuit. *See Newman*, 51 F.4th at 1135–36.

[10] In his Opposition, Plaintiff requests leave to amend his Complaint if the "Court finds that Mr. Fseisi's Complaint pleads language that too closely resembles a defamation claim," to reflect "that the harm suffered did not stem from defamation, but rather from the fraudulent misrepresentations that were designed to give him a false sense of security in speaking freely about his opinions and beliefs concerning the government." [Opp.] at 13 n.3. Given the basis for the Court's rulings, any such amendment would be futile and the Court will not grant leave to amend.