UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

AMJAD FSEISI,

     Plaintiff,

v.                                 CASE NO.: 1:25-CV-2368-AJT-WBP

O'KEEFE MEDIA GROUP,
et al.,

     Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION FOR ATTORNEY'S FEES & COSTS UNDER VA. CODE § 8.01-223.2(C)**

In his Response, Plaintiff Amjad Fseisi insists his case does not implicate Virginia's anti-SLAPP statute, and that even if it does, the Court should deny Defendants O'Keefe Media Group ("OMG") and James O'Keefe their attorney's fees. ECF No. 47. Mr. Fseisi is wrong. Indeed, he places his lawsuit at the heart of the anti-SLAPP statute when he reiterates that his case was all about acts that allegedly "impugn[ed] [his] professional reputation[.]" *Id.* at 5; *see also* ECF No. 1 (hereinafter "Compl.") at 10 (¶57). That is, all of his dismissed counts presented nothing more than "defamation-by-another-name theories" long foreclosed by Fourth Circuit precedent. ECF No. 43 at 4; *see* ECF No. 40 at 5-6 (discussing *Food Lion, Inc. v. Cap. Cities/ABC, Inc.*, 194 F.3d 505 (4th Cir. 1999)). Accordingly, the Court should award OMG and O'Keefe fees under Virginia's anti-SLAPP statute. Va. Code § 8.01-223.2(C) ("Any person who has a suit against him dismissed . . . pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs.").

1

I.      **Virginia's Anti-SLAPP statute is implicated by the Court's dismissal ruling.**

Virginia's Anti-SLAPP statute is implicated here because Mr. Fseisi's claims were all "based solely on statements . . . regarding matters of public concern" that the Court ruled are protected under the First Amendment. Va. Code § 8.01-223.2(A); *see, e.g.*, ECF No. 40 at 2-3 (OMG's publication "showed [Fseisi] responding affirmatively to Jane Doe's question of whether 'the intel community used FISA to spy on Trump and his team.'"); *Rolofson v. Fraser*, 81 Va. App. 508, 529 (2024) (quoting *Liverman v. City of Petersburg*, 844 F.3d 400, 408 (4th Cir. 2016)) ("'the operations and policies of [a] Department'" are a "public matter[.]"). In response, Fseisi claims (1) the statute does not apply because the Court did not cite to the statute in its dismissal ruling; (2) Fseisi pled actual malice and the Court did not address it; and (3) the dismissal was based largely on a failure to plead non-publication damages. ECF No. 47 at 2-3. His arguments are without merit.

The anti-SLAPP statute need not be invoked by the Court at the dismissal stage to support fees and costs recovery. OMG and O'Keefe appropriately pursued their substantive rights under Virginia's anti-SLAPP law in this Court under the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 54(d)(2); *Fairfax v. New York Pub. Radio*, 2023 WL 3303125 at *8 (E.D. Va. Apr. 4, 2023), *aff'd,* 2024 WL 3935041 (4th Cir. Aug. 26, 2024) (a consolidated ruling over separate motions to dismiss for anti-SLAPP attorneys' fees). Defendants preserved the statutory issue in their motion to dismiss, and the Court dismissed Counts I and II because their publication-based damages theory was barred by the First Amendment. ECF No. 16 at 3; ECF No. 40 at 4–6. Under Rule 54(d)(2), the absence of an express anti-SLAPP citation in the dismissal order does not preclude a post-judgment determination that the dismissal was pursuant to the immunity provided by the anti-SLAPP law.

Mr. Fseisi's inclusion of a bare actual malice label is not a talisman against anti-SLAPP immunity. Section 8.01-223.2(B) withholds immunity only for statements the declarant knew or should have known were false, or made with reckless disregard for whether they were false. *Brooks-Buck v. Wahlstrom* illustrates the point: the Virginia Supreme Court found the statutory exception plausibly implicated where a defamation complaint alleged a concrete false accusation of perjury, "baseless accusations," "ill will," "extreme animosity," and "retaliation" supporting an inference of knowing falsity or reckless disregard. 304 Va. 470, 484 (2025). This case is different. Fseisi did not plead a timely defamation claim or facts comparable to those in *Brooks-Buck*. Instead, he tried to recover publication damages by labeling his causes of action as fraud, conspiracy, and wiretapping. Despite those labels, the very videos referenced by his Complaint captured his own statements on matters of public concern, and the Court observed that they did not appear cut or deceptively edited. ECF No. 40 at 2 n.1, 4–6. Subsection (B) does not permit a plaintiff to evade anti-SLAPP consequences simply by reciting "actual malice" after pleading publication-based damages that controlling First Amendment law forecloses.

Finally, Fseisi's failure to plead non-publication damages supports an award of anti-SLAPP fees. ECF No. 47 at 2-3; *see* ECF No. 40 at 6 ("All of Plaintiff's claimed damages arise out of OMG's publications, however characterized, and are . . . barred under *Food Lion*."). Here, Fseisi seems to suggest that because the torts he pled do not involve publication, he may somehow avoid the fact that all of his pleadings and other admissions in this case were entirely about OMG's and Mr. O'Keefe's speech. Even the publications themselves were incorporated into his Complaint, with allegations as to falsity.  Compl. ¶¶47-48; *see* ECF No. 40 at 2 n.1 (acknowledging incorporation). By failing to plead anything other than publication damages, Fseisi's lawsuit is nothing more than three "tort claim[s] . . . based solely on statements (i) regarding matters of public

3

concern that would be protected under the First Amendment to the Constitution of the United States[.]" Va. Code Ann. § 8.01-223.2(A). The Virginia anti-SLAPP statute is implicated by this case.

## II.    The Anti-SLAPP fee award factors justify fees to OMG and O'Keefe.

This Court has awarded Virginia anti-SLAPP fees where a plaintiff filed his suit after binding Fourth Circuit precedent made the governing rule clear, because the plaintiff was then on "clear notice" that the action had "no prospects for success." *N.Y. Pub. Radio*, 2023 WL 3303125 at *7–8. The same is true here: *Food Lion* did not merely weaken Mr. Fseisi's theory; it foreclosed the publication-damages maneuver on which his case depended. That objective defect is enough. Each factor of the anti-SLAPP analysis favors an award of fees and costs to OMG and Mr. O'Keefe. *See* ECF No. 43 at 5-7.

In response, Mr. Fseisi first offers an incorrect description of the *Rolofson* decision, claiming that anti-SLAPP fees were denied because the plaintiff acted in good faith and "was seeking personal redress to try to salvage his military career[.]" ECF No. 47 at 3. No: the defamation claims were dismissed (1) because of the qualified privilege for statements made in a quasi-judicial proceeding; and (2) as non-actionable opinion, respectively. *Compare* ECF No. 47 at 3 *with Rolofson*, 81 Va. App. at 519–23. The *Rolofson* court declined to apply the anti-SLAPP statute because, among other things, the statements at issue did *not* address a matter of public concern. *Rolofson*, 81 Va. App. at 527–31. Nowhere does Mr. Fseisi suggest that the speech here—the basis of his entire lawsuit—was not based solely on statements regarding matters of public concern.

Mr. Fseisi's claims for fraud and conspiracy to commit fraud (Counts I and II) were frivolous, groundless, and unreasonable. *But see Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581,

4

600–01 (E.D. Va. 2020) (considering whether an action was "'groundless, frivolous, *or* unreasonable[.]'" (emphasis added)). Fseisi counters that his claims were "made in good faith based on available facts and available precedent[.]" ECF No. 47 at 4. Yet he does not address, much less claim, that *Food Lion* or the Supreme Court's *Hustler* precedent were unavailable to him. *See* ECF No. 40 at 5-6 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988)). Fseisi relies strictly on *Cohen v. Cowles Media Company*, but, as this Court noted, that very case was distinguished in *Food Lion*, and a plaintiff is required to assert something besides publication damages unless he is asserting a defamation claim. ECF No. 47 at 4 (citing 501 U.S. 663, 669 (1991)). Since the entirety of Fseisi's alleged damages was plainly foreclosed, his claims for fraud and conspiracy were frivolous, groundless and unreasonable. *See Food Lion*, 194 F.3d at 522–24. A plaintiff cannot avoid anti-SLAPP fees by characterizing a foreclosed theory as brought in "good faith." The relevant point is objective: once binding precedent squarely bars the liability and damages theory, forcing speakers to litigate that theory is the very burden § 8.01-223.2(C) is intended to relieve.

So, too, was Mr. Fseisi's wiretapping claim (Count III) frivolous, groundless and unreasonable. *See* ECF No. 43 at 4-5. He claims that wiretapping "was clearly not under the Anti-SLAPP Act . . . and was not based on the First Amendment at all," immediately after reiterating his contradictory claim that "the recordings were made to defame him[.]" ECF No. 47 at 6; *see* Compl. ¶72. He then doubles down, stating he "strongly believe[s] that an intent to widely publish false and misrepresented 'news' constitutes a future tortious act[.]" ECF No. 47 at 6. All of this, again per *Food Lion*, falls within the First Amendment's strictures. The added layer of a more complicated statutory claim does not help Fseisi: wiretapping for the purpose of committing defamation—disguised under the rubric of fraud—is no less protected when all alleged damages

are tied to publication. That Fseisi's briefing indicates he may still not have learned this from the Court's dismissal ruling does not alleviate his liability. Hence, the Court should also award anti-SLAPP fees for Fseisi's wiretapping claim.[1]

In their opening brief for fees, OMG and O'Keefe did not extensively address improper motive, or bad faith on Mr. Fseisi's part, but there are ample indications of it.[2] *See* ECF No. 43 at 7. Fseisi's response here provides yet another example of his bad faith: he calls Defendants' "sting political operation . . . a deliberate, bad-faith attempt to impugn the Plaintiff's professional reputation[.]" ECF No. 47 at 5. So, he tacitly admits again that this is a defamation case in disguise, improperly motivated to bypass the tort's rigorous requirements under the First Amendment. He alleges he suffers from a "disparity in resources," but brought this case by counsel: he was as capable as anyone in that position of assessing the law, including Virginia's anti-SLAPP statute, the First Amendment, and the binding precedent in this field. *See also id.* (calling this case "well-argued[.]"). All the anti-SLAPP statute factors support awarding fees and costs to OMG and O'Keefe.

## Conclusion

Mr. Fseisi complains an award of anti-SLAPP fees and costs to OMG and Mr. O'Keefe "would create a chilling effect on future citizens from attempting to *protect their reputation from intentional disparagement* by such political media groups." *Id.* (emphasis added). What Mr. Fseisi

---

[1] Alternatively, even if the Court concludes § 8.01-223.2(C) does not independently authorize fees for work unique to Count III, it should not exclude time that also advanced the successful defense of Counts I and II. Count III arose from the same recordings, alleged misrepresentations, publication, and asserted defamation-or-fraud predicate as the state-law claims; much of the factual and legal work therefore served a common core. *See Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983).

[2] The Court need not find subjective bad faith because the objective legal deficiencies in the pleaded theories, as well as the statute's deterrent purpose, each independently support the Court exercising its discretion under the statute to award fees.

misses, however, is that suits like his *are supposed to be deterred.* Defamation-by-another-name theories have been foreclosed under the First Amendment for decades, but here we are. *See Hustler*, 485 U.S. at 56 ("such a standard is necessary to give adequate 'breathing space' to the freedoms *protected by the First Amendment*." (emphasis added)). An award here would deter attempts to evade settled First Amendment limits through alternative tort labels, without discouraging plaintiffs who plead colorable, fact-supported claims, that are not foreclosed by law. The Court should award OMG and Mr. O'Keefe's their attorney's fees and costs under the anti-SLAPP statute.

Respectfully submitted,

<div style="display:flex">
<div>

*/s/ Trey Mayfield*
Earl N. "Trey" Mayfield, III VSB# 41691
(local counsel)
tmayfield@chalmersadams.com
Dan Backer
1032 15th St., NW, #374
Washington, D.C. 20005
Phone: 678-582-8900

</div>
<div>

*/s/ Benjamin Barr*
Benjamin Barr*
(*pro hac vice*)
BARR & KLEIN PLLC
1050 30th St. NW
Washington, DC 20007
Telephone: (202) 595-4671
ben@barrklein.com

*/s/ Stephen Klein*
Stephen R. Klein
(*pro hac vice*)
BARR & KLEIN PLLC
1629 K St. NW Ste. 300
Washington, DC 20006
Telephone / Fax: (202) 804-6676
steve@barrklein.com

</div>
</div>

*Counsel to O'Keefe Media Group and James O'Keefe*

* Admitted in Illinois and not a member of the D.C. Bar. Practicing law in the District of Columbia in federal courts pursuant to D.C. Court of Appeals Rule 49(c)(3).

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June 2026 I caused a copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all interested parties.

/s/ Trey Mayfield
Earl N. "Trey" Mayfield, III